UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

VLADIMIRA KOCH a/k/a VLADKA KOCH;
MICHAL KOCH, her son; EUROPA DOCU-
SEARCH, INC.; EUROVID, INC.; EUROVID
FKK; HELIOS NATURA; EUROPA DOUC-
SEARCH s.r.o.; and EUROVIDFKK, s.r.o.,          10 Civ. 9152

                Plaintiffs,            OPINION

   -against-

VRATISLAV PECHOTA, JR., ESQ.,
individually, and LAW OFFICE OF
VRATISLAV PECHOTA, JR., ESQ.,

                Defendants.

------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6-26-12

A P P E A R A N C E S:

        Attorneys for Plaintiffs

        KTHL LAW OFFICES, P.C.
        c/o 412 Chestnut Street, Suite 100
        Lebanon, PA  17042-6139
        By:  Jaromir Kovarik, Esq.

        Attorneys for Defendants

        GARBARINI & SCHER, P.C.
        432 Park Avenue South, 9th Floor
        New York, NY  10016-8013
        By:  Gregg D. Weinstock, Esq.

**Sweet, D.J.**

Defendants Vratislav Pechota, Jr., Esq. ("Pechota" or the "Defendant") and his firm, the Law Office of Vratislav Pechota, Jr., Esq. (collectively, the "Defendants") have moved pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment to dismiss the following causes of action from the complaint of plaintiffs Vladimira Koch a/k/a Vladka Koch ("Mrs. Koch"); her son, Michal Koch ("Michal Koch"); and Europa Docu-Search, Inc.; Eurovid, Inc.; Eurovid FKK; Helios Natura; Europa Douc-Search s.r.o.; and Eurovidfkk, s.r.o. (the "Europa Plaintiffs") (collectively, the "Plaintiffs"): (1) the fifth cause of action alleging legal malpractice (the "Fifth Cause of Action"); (2) the first cause of action alleging breach of duty by an agent (the "First Cause of Action"); (3) the third cause of action for breach of fiduciary duty (the "Third Cause of Action"); (4) the eighth cause of action alleging interference with contract (the "Eighth Cause of Action"); and (5) the ninth cause of action alleging exemplary or punitive damages (the "Ninth Cause of Action").

The Defendants have also moved for remand to the state court pursuant to 28 U.S.C. § 1447(e), for bifurcation pursuant

1

to Rule 42(b) of the Federal Rules of Civil Procedure, and for
an order directing the Plaintiffs to appear in the Southern
District of New York for deposition or, in the alternative, pay
the Defendants' reasonable expenses for conducting the
depositions in the Czech Republic.  On the facts and conclusions
set forth below, the motion is granted in part and denied in
part.

## Prior Proceedings

On December 2, 2010, the Plaintiffs filed a summons in
the Supreme Court of the State of New York, New York County
Index # 115653/10 naming Pechota and his firm as Defendants and
seeking relief arising out of fraud, professional malpractice,
breach of fiduciary duty and breach of contract (the "State
Court Action").  On December 8, 2010, the Defendants filed a
notice of removal, removing the State Court Action to this Court
on the ground of diversity.  On July 22, 2011, the Plaintiffs
filed their complaint.

The dispute between the parties centers upon Pechota's
conduct as a lawyer during his representation of Mrs. Koch and
Michal Koch.  The complaint alleges that as a result of the
Defendants' actions, Mrs. Koch and Michal Koch sustained

2

injuries by losing their ability to enter, live and work in the Unites States, which could have been averted had the Defendants not departed from the standard procedure in providing professional services to a client.

The instant motion was heard and marked fully submitted on March 15, 2012.

**The Facts**

The facts are set forth in the Defendants' Local Rule 56.1 Statement, the Plaintiffs' Local Rule 56.1 Statement, the affidavit of Mrs. Koch and the complaint and are not in dispute except as noted below.

Pechota is a licensed attorney in the states of New York and New Jersey, specializing in immigration law.

Robert Koch ("Mr. Koch") and Mrs. Koch first contacted Pechota in 1998.  At that time, Mrs. Koch was a citizen of the Czech Republic, attempting to obtain a green card or permanent resident status in the United States.  During their meeting, Pechota offered to represent Mr. Koch and Mrs. Koch in a joint representation, but a retainer was not signed at the time.  An

original retainer was signed between Mrs. Koch, Mr. Koch, and

Defendants at some point in 1998.  According to Mrs. Koch a

modified retainer, dated May 18, 2000, was executed.


In 2000, Mr. and Mrs. Koch formally retained Pechota

to obtain a green card for Mrs. Koch and Michal Koch with Mr.

Koch as their sponsor.  Pechota prepared the necessary documents

to be submitted to the Immigration and Naturalization Service.

The green cards were conditional and had a temporary, two-year

validity, after which another application was required to remove

the condition so that the cards would be permanent.


According to Mrs. Koch, Pechota failed to take

appropriate action when asked to remove the conditions on the

green cards.  According to Pechota, he was not retained by Mr.

Koch or Mrs. Koch to remove the condition on the green cards.


The duration of retention for this purpose is in

dispute.  According to Mrs. Koch, the representation included

all immigration matters including the removal of conditions on

the green cards and naturalization, which was contemplated to

take 10 years.  According to Pechota, the representation ended

prior to January 5, 2002 when the green cards were issued.


4

Towards the end of 2003, Mr. Koch engaged in domestic violence against Mrs. Koch, and he left the marital residence in December 2003.  According to Pechota, Mrs. Koch sought his advice regarding Mr. Koch's conduct, and that he refused to provide such advice.  On or about July 2, 2004, Mrs. Koch tried to retain him to represent her as her divorce attorney and for advice concerning her expired immigration status.  According to Pechota, he charged her $75 for a consultation but declined to represent Mrs. Koch on these matters.  According to Mrs. Koch, Pechota received at least $100.

According to Pechota, he does not practice family law, and with respect to immigration law, he does not represent people with expired green cards.  He maintains that no attorney-client relationship resulted between the parties subsequent to the issuance of Mrs. Koch's green card on January 5, 2002.  This contention is contraverted on information and belief.

In February 2004, Mr. Koch sued Mrs. Koch for divorce in Westchester County, and Mrs. Koch was represented by Raymond A. Bragar ("Bragar"), while Mr. Koch was represented by Frank J. Salvi ("Salvi").

5

According to Mrs. Koch, there were various communications between Salvi and Pechota regarding her immigration matter.  According to Pechota, he does not recall having any conversations with Mr. Koch's matrimonial attorney, and his contact with Salvi was limited to sending a fax in an attempt to collect money that Mr. Koch owed Pechota.

According to Pechota, he did not represent Mr. Koch on any matter except the joint representation of Mr. Koch and Mrs. Koch in the immigration matter.  According to Mrs. Koch, Pechota provided services and represented Mr. Koch in connection with the divorce proceedings commenced in 2004 without her permission.

In 2005, Mrs. Koch's and Michal Koch's legal permanent status lapsed.

**The Summary Judgment Standard**

Summary judgment is granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); SCS Commc'ns, Inc. v. Herrick Co., 360

6

F.3d 329, 338 (2d Cir. 2004).  In determining whether a genuine
issue of material fact does exist, a court must resolve all
ambiguities and draw all reasonable inferences against the
moving party.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith
Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d
538 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir.
2002).  In addition, courts do not try issues of fact on a
motion for summary judgment, but rather, determine "whether the
evidence presents a sufficient disagreement to require
submission to a jury or whether it is so one-sided that one
party must prevail as a matter of law."  Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d
202 (1986).

     The moving party has the initial burden of showing
that there are no material facts in dispute, Adickes v. S.H.
Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142
(1970), and can discharge this burden by demonstrating that
there is an absence of evidence to support the nonmoving party's
case.  Celotex, 477 U.S. at 325.  The nonmoving party then must
come forward with "specific facts showing that there is a
genuine issue for trial," Fed. R. Civ. P. 56(e), as to every
element "essential to that party's case, and on which that party
will bear the burden of proof at trial."  Celotex, 477 U.S. at

7

322.  "[T]he non-moving party may not rely simply on conclusory

allegations or speculation to avoid summary judgment, but

instead must offer evidence to show that its version of the

events is not wholly fanciful."  Morris v. Lindau, 196 F.3d 102,

109 (2d Cir. 1999) (quotation omitted).


**The Motion To Dismiss The Malpractice Claim Is Denied**


          Pechota has moved to dismiss the Fifth Cause of Action

alleging malpractice on the grounds of the three year statute of

limitations.  In New York, an action to recover for legal

malpractice is governed by a three year statute of limitations,

N.Y. C.P.L.R. § 214(6); Bastys v. Rothschild, 154 Fed App'x.

260, 262 (2d Cir. 2005), and it begins to run on "the day an

actionable injury occurs," regardless of when plaintiffs

discover such injury.  McCoy v. Feinman, 99 N.Y.2d 295, 301, 755

N.Y.S.2d 693, 785 N.E.2d 714 (2002).


          Under the "continuous representation doctrine,"

however, the statute of limitations is tolled for as long as

"there is a mutual understanding" between attorney and client

"of the need for further representation on the specific subject

matter underlying the malpractice claim."  Id. at 306; see also

Shumsky v. Eisenstein, 96 N.Y.2d 164, 169, 726 N.Y.S.2d 365, 750

8

N.E.2d 67 (2001) (finding that continuous representation existed where plaintiffs were "left with the reasonable impression that defendant was, in fact, actively addressing their legal needs" in connection with the matter in question). The doctrine "is premised on the trust relationship between the attorney and the client, and the inequity of barring the client from suing the attorney based on the running of the statute of limitations during the life of that relationship." Mason Tenders Dist. Council Pension Fund v. Messera, 958 F. Supp. 869, 888 (S.D.N.Y. 1997) (citing New York state cases).

As established by the facts set forth above, Pechota and Mrs. Koch have differing versions of the duration of Pechota's representation. The duration of the representation according to Mrs. Koch extended into the three-year limitation period (2007-2010) and included the removal of the conditions of her and Michal Koch's green cards, conditions which were never removed. In addition, Mrs. Koch's affidavit can be read to allege that Pechota's advice resulted in her inability to enter the United States. According to Pechota, the legal malpractice claim expired in or around January 2005, and therefore the Plaintiffs' claim should be dismissed as time-barred.

9

Thus, there are disputed questions of fact concerning the duration of the representation, its extent, and the date of any alleged malpractice, which bars the grant of summary judgment.  See Protostorm, LLC v. Antonelli, Terry, Stout & Kraus, --- F. Supp. 2d ----, 2011 WL 5975896, at *11-13 (E.D.N.Y. November 29, 2011) (denying a motion for summary judgment on statute of limitation grounds based on questions as to the duration and termination of representation).

Accordingly, the motion to dismiss the Fifth Cause of Action alleging malpractice is denied.

**The Motion To Dismiss The Breach Of Agent's Duty And Fiduciary Duty Is Denied**

As conceded by the Plaintiffs, "Plaintiffs' claims for breach of an agent's or a fiduciary's duty arise from the same underlying facts as the legal malpractice claim" (Memo in Support at 11).  For the same reasons set forth above, the existence of disputes of material facts, the motion for summary judgment with respect to the First Cause of Action and the Third Cause of Action are denied.

**The Motion To Dismiss The Interference With Contract Claim Is Granted**

10

In New York, the three year statute of limitation, N.Y. C.P.L.R. § 214(4), applies to the claim of tortious interference with contract.  <u>Norris v. Grosvenor Marketing, Ltd.</u>, 803 F.2d 1281, 1287 (2d Cir. 1986).  Generally, the statute begins to run from the date of the induced breach of contract.  <u>Id.</u>

Neither the facts relating to any contract nor any interference are set forth in the complaint.  Instead, the complaint makes vague allegations that Pechota "schemed" with Mr. Koch to exclude Mrs. Koch from the United States.  To be timely, the breach might have happened no earlier than December 2007, but there are no allegations as to when the tortious interference might have occurred.  Here, the last time Pechota was in contact with Mr. Koch, was during his joint representation of Mr. and Mrs. Koch and the Plaintiffs have not pled any facts to oppose the Defendants' motion.

Accordingly, the Defendants' motion to dismiss the Eighth Cause of Action as pleaded is granted.

**The Motion To Dismiss The Exemplary Damages Cause Of Action Is Granted**

The Ninth Cause of Action in the complaint alleges a claim for exemplary or punitive damages.  There is no separate cause of action for such damages under New York law.  <u>Martin v. Dickson</u>, 100 Fed. App'x. 14, 16 (2d Cir. 2004) (finding that the lower court properly dismissed a cause of action for punitive damages because there is no such separate cause of action in New York); <u>Paisley v. Coin Device Corp.</u>, 5 A.D.3d 748, 750, 773 N.Y.S.2d 582 (2d Dep't 2004) (noting that there is "no separate cause of action for punitive damages . . . for pleading purposes."); <u>Weir Metro Ambu-Service, Inc. v. Turner</u>, 57 N.Y.2d 911, 912, 456 N.Y.S.2d 757 (1982) (stating that "punitive damages may not be sought as a separate cause of action.").

Accordingly, the motion to dismiss the Ninth Cause of Action is granted.

**The Motion To Remand Is Denied**

Defendants cite to <u>Mensah v. World Truck Corp.</u>, 210 F. Supp. 2d 320 (S.D.N.Y. 2002), for the proposition that courts have the right to exercise discretion with respect to remanding a case back to state court by balancing the equities, interests and prejudices to the parties involved.  (Memo in Support at 13).   The Defendants contend that this Court should adopt the

12

Mensah court's reasoning and consider the request to remand
under the rubric of Section 1447(e). In Mensah, however, both
parties supported the remand. Mensah, 210 F. Supp. 2d at 321.
Moreover, there were three action arising from the same motor
vehicle collision, and the court chose to remand to "avoid
piecemeal litigation and the risk of inconsistent and
contradictory results." Id.

In contrast, here, while Pechota's conduct may have
played a part in the state action against Mrs. Koch's former
attorneys, the nature of Pechota's alleged malpractice is
qualitatively different the allegations against Mrs. Koch's
divorce attorneys. The overlap of facts between this case and
the state case will be minimal, if any, nor is consolidation of
the cases a concern. In addition, considering that the instant
matter is on a case-management schedule with a scheduled trial
date, while the state action is still undergoing discovery,
efficiency concerns are also moot.

Moreover, the requirements for considering a motion to
remand to state court are set forth in 28 U.S.C. § 1447.
Defendants erroneously seek to remand this action to state court
pursuant to 28 U.S.C. § 1447(e), which provides as follows:

13

> If after removal the plaintiff seeks to join
> additional defendants whose joinder would
> destroy subject matter jurisdiction, the
> court may deny joinder, or permit joinder
> and remand the action to the State court.

28 U.S.C. § 1447(e).  Section 1447(e) is inapplicable to the

instant case as there are no additional defendants seeking

joinder.  The more appropriate section is Section 1447(c), which

states that "[i]f at any time before final judgment it appears

that the case was removed improvidently and without

jurisdiction, the district court shall remand the case, and may

order the payment of just costs."  28 U.S.C. § 1447(c).  Thus, a

"federal court may remand only on the ground that it lacks

subject matter jurisdiction."  ERWIN CHEMERINSKY, FEDERAL JURISDICTION §

5.5 (Aspen, 4th Ed. 2003).  Here, because the complete diversity

and amount in controversy requirements are met, this Court does

not lack subject matter jurisdiction over the matter and

therefore remand is inappropriate.

Thus, for the reasons stated above, the motion to

remand is denied.

**The Motion to Bifurcate Discovery is Denied**

14

Rule 42 of the Federal Rules of Civil Procedure allows a court to order separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). The Defendants argue that "the liability and damages claims are both complex" and therefore requires the bifurcation of discovery to "promote judicial economy." (Memo in Support at 14). The alleged complexity of the claims are not sufficient to demonstrate that it would be more convenient, avoid prejudice or expedite and economize the proceedings if this Court ordered the bifurcation of the liability and damages issues. Moreover, the rule does not allow for the bifurcation of discovery, as the Defendants seek, but only for the bifurcation of trials where there may be "separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b).

For the reasons above, the Defendant's motion to bifurcate discovery is denied.

## Defendants' Request For an Order Directing Plaintiffs to Appear for Deposition is Denied

Defendants contend that they are "entitled" to take the Plaintiffs' deposition in the Southern District of New York, as the Plaintiffs have initiated the case in this district.

15

They seek an order from this Court directing the Plaintiffs to appear and bear the costs of the Defendants' "reasonable travel and accommodation expenses for defense counsel, defendant, and court reporter if it is established they cannot appear in the Southern District." (Memo in Support at 15).

Generally, "the proper place for taking an individual's deposition is his or her place of residence." Fed. Deposit Ins. Co. v. La Antillana, S.A., 1990 WL 155727, at *1 (October 5, 1990). Courts also "retain substantial discretion to designate the site of a deposition." Buzzeo v. Bd. Of Educ., Hempstead, 178 F.R.D. 390, 392 (E.D.N.Y. 1998). A motion "not to have a deposition at a particular site, or to compel deposition in a particular location, is considered by reviewing three factors of the cost, convenience, and litigation efficiency of the designated location." Sloniger v. Deja, 2010 WL 5343184, at *5 (W.D.N.Y. Dec. 20, 2010).

Plaintiffs presently reside in the Czech Republic and allege that they will be excluded from the United States by the Citizenship and Immigration Service should they attempt to enter the country. They contend that Mrs. Koch "might encounter more trouble attempting to enter the country without a visa . . . she

16

might get here and be arrested or deported on the spot." (Memo
in Opp. at 11).  Plaintiffs also contend that "Ms. Koch does not
have unlimited resources available to travel, particularly after
incurring a large sum to arrange a video-conference deposition
agreed to by Defendants." (Id. at 12).


        The New York County court has granted leave to conduct
Mrs. Koch's deposition by video-conference, and this Court has
previously found this method of deposition testimony acceptable
in the instant case.  As observed by the Second Circuit in
Dirienzo v. Philip Services Corp., while live testimony is
preferable, the difficulties regarding the unavailability of
parties or witnesses can most likely be resolved by the use of
videotaped depositions, obtained through letters rogatory.  294
F.3d 21, 30 (2d Cir. 2002); see also Maersk, Inc. v. Neewra,
Inc., 2008 WL 4303051, at *4 (S.D.N.Y. Sept. 17, 2008).


        Here, the Court's Order, filed January 12, 2012
already directed the Defendants to appear for the previously
agreed upon videoconference deposition of Mrs. Koch.  As per the
parties' agreement, the Plantiffs paid for Mrs. Koch's hotel,
counsel, interpreter and videoconferencing arrangements.  At

that time, Defendants failed to appear and examine the
Plaintiff.

In considering the cost, convenience, and litigation
efficiency, the deposition of Mrs. Koch's should commence in the
Czech Republic via videoconference. As per the parties
agreement, and because Mrs. Koch initiated this action, the
Plaintiffs will bear the cost for her videoconference
deposition.

Accordingly, the Defendant's request for an order
directing the Plaintiffs to appear in the Southern District and
to bear costs of the Defendants' reasonable expenses for
conducting the deposition in the Czech Republic is denied.

**Conclusion**

Upon the facts and conclusions set forth above, the
Defendants' motion to dismiss the malpractice, the breach of
duty of agent and of a fiduciary duty claims are denied and the
motion to dismiss the tortious interference of contract claim
and the exemplary damages claim is granted. The motions to
remand this action to the Supreme Court of the State of New

18

York, County of New York, to bifurcate discovery, and to direct
Plaintiffs to appear for deposition in the Southern District of
New York is denied.

It is so ordered.

New York, NY
June 22, 2012

ROBERT W. SWEET
U.S.D.J.

19