UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X

VLADIMIRA KOCH a/k/a VLADKA KOCH;

                 Plaintiff,          10 Civ. 9152

                                       OPINION

    -against-

VRATISLAV PECHOTA, JR., ESQ.,
individually, and LAW OFFICE OF
VRATISLAV PECHOTA, JR., ESQ.,

                 Defendants.

----------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiff

        KTHL LAW OFFICES, P.C.
        c/o 412 Chestnut Street, Suite 100
        Lebanon, PA  17042-6139
        By:  Jaromir Kovarik, Esq.

        Attorneys for Defendants

        GARBARINI & SCHER, P.C.
        432 Park Avenue South, 9th Floor
        New York, NY  10016-8013
        By:  Gregg D. Weinstock, Esq.

**Sweet, D.J.**

There are several motions currently pending in this action between Plaintiff Vladimira Koch a/k/a Vladka Koch ("Mrs. Koch") and defendants Vratislav Pechota, Jr., Esq. ("Pechota" or the "Defendant") and his firm, the Law Office of Vratislav Pechota, Jr., Esq. (collectively, the "Defendants). This case has a long history to it and the record is replete with difficulties. As set forth below, this opinion attempts to resolve all outstanding motions by the parties and the non-party witnesses in the hope of preparing this action for its scheduled trial date.

The facts underlying this action were previously set forth in a number of opinions by this Court. See e.g. Koch v. Pechota, No. 10 Civ. 9152, 2012 WL 2402577 (S.D.N.Y. June 26, 2012); Koch v. Pechota, No. 10 Civ. 9152, 2012 WL 4876784 (S.D.N.Y. Oct. 12, 2012) (the "October 11 Opinion"); Dkt. No. 177 (Opinion, dated June 22, 2012) (the "June 22 Opinion"); Dkt. No. 190 (Opinion, dated October 11, 2012).  The general background of this case and prior litigation between the parties is assumed.

## 1) The Non-Party Witnesses' Motions to Quash Are Granted

First, non-party witnesses Frank J. Salvi ("Salvi") and Raymond A. Bragar ("Bragar"), who are also defendants in the state litigation brought by the Plaintiffs in the Supreme Court of the State of New York (the "State Court Action"), and Scott C. Tuttle ("Tuttle"), who is associated with the law firm of McManus & Richter, P.C. ("McManus"), which represented Bragar, (together with Salvi and Bragar, the "Non-Party Witnesses"), have moved to quash subpoenas served upon them pursuant to Rule 45 of the Federal Rules of Civil Procedure. As set forth below, the Non-Party Witnesses' motions are granted.

Rule 45 of the Federal Rules of Civil Procedure requires that "[a] party issuing a subpoena to a non-party for the production of documents during discovery must provide prior notice to all parties to the litigation." Fed. R. Civ. P. 45(b)(1); Schweizer v. Mulvehill, 93 F. Supp. 2d 376, 411 (S.D.N.Y. 2000). The rule also mandates that an attorney issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1). If the subpoena imposes an undue burden or expense, the issuing Court is empowered to quash the

3

subpoena.  Fed. R. Civ. P. 45(2)(c)(3)(iv).  "Motions to compel and motions to quash a subpoena are both 'entrusted to the sound discretion of the court.'"  In re Fitch, Inc., 330 F.3d 104, 108 (2d Cir. 2003) (quoting United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000)).

          Whether a subpoena imposes an "undue burden" "depends on such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed."  Night Hawk Ltd. v. Briarpatch Ltd., L.P., No. 03-1382(RWS), 2003 WL 23018833, at *8  (S.D.N.Y. Dec. 23, 2003) (citations and quotations omitted).  "The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings."  Id.  Additionally, "the status of a witness as a non-party to the underlying litigation entitles [the witness] to consideration regarding expense and inconvenience."  Id.; see also Watts v. SEC, 482 F.3d 501, 509 (D.C. Cir. 2007) (stating that the "'undue burden' standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties.").

4

Bragar and Salvi were involved in the Kochs' divorce matter in Westchester County, and are currently defendants in the State Court Action, Koch v. Sheresky, Aronson, et al., in the New York Supreme Court (Dkt. No. 112337/07, filed on November 23, 2011).  The State Court Action alleges misconduct and fraud by Salvi and negligence by Bragar and Raymond Ragues ("Ragues") for their representation of the Kochs during the underlying matrimonial action.  Bragar and Salvi have testified and been deposed in connection with the State Court Action, as to their involvement in the Kochs' divorce proceedings.

Tuttle and his law firm, McManus, were retained in 2007, when Plaintiff filed her legal malpractice claim against Bragar in the State Court Action.  On December 22, 2010, in the context of the State Court Action, both Tuttle and McManus were served with subpoenas directing them to appear on January 11, 2011 to give testimony in that action and produce documents in their possession, custody or control related to their representation of Bragar.  (Tuttle Decl., Ex. D).  Plaintiff claimed that Tuttle and McManus improperly obtained information from the Consulate General of the Czech Republic regarding the Plaintiff and her corporate interests.  (Id., Ex. E).  Plaintiff filed a formal complaint with the Minister of Affairs of the

5

Czech Republic and subpoenaed Tuttle and McManus to give their testimony.  (Id., Ex. D).

On November 21, 2011, Justice Emily J. Goodman of the State Supreme Court issued an Opinion in the State Court Action. Koch v. Sheresky, Aronson & Mayefsky LLP, No. 112337/07, 33 Misc. 3d 1228(A), 2011 WL 6015691 (N.Y. 2011)  (the "November 21 Order").  Among other rulings, Justice Goodman denied Plaintiff's motion to enforce a subpoena against Tuttle, finding that "plaintiff provides no persuasive basis for requesting Tuttle's deposition . . . ."  Id. at *8.  The November 21 Order also denied Plaintiff's motion to compel Bragar to appear for a continued deposition and to produce additional documents, because he "provided an affidavit of a good faith search" and the "record contains no evidence that [his firm] has documents from the matrimonial file that have not been exchanged . . . ." Id.

In March 2012, Plaintiff issued a subpoena and document demand on Bragar, Salvi and Ragues in the instant action.  Bragar, Salvi and Ragues moved this Court for an order to quash the subpoena served by the Plaintiffs, in its entirety. They maintained that the subpoenas were "unduly burdensome" and

overbroad, and that they amounted to an improper effort to circumvent Justice Goodman's November 21 Order.

In granting the motions to quash, the October 11 Opinion noted that:

> " . . . the Non-Party Witnesses are non-parties to the action and have previously been deposed on several occasions.  For example, Salvi was deposed for three days in the State Court Action, in which Plaintiff's counsel specifically questioned Salvi with regard to the Pechota Defendants, his relationship with the Pechota Defendants and Mrs. Koch and the Pechota Defendants' representation of Mrs. Koch in connection with immigration matters.  (Salvi Memo at 8). Similarly, Bragar was subject to fourteen hours of deposition testimony in connection with the State Court Action, and the Plaintiffs' request included inquiries of Bragar's representation of Mrs. Koch, post-dated representation and immigration issues related to the instant action.  (Bragar Memo at 9)."

(October 11 Opinion at 8-9).

This Court found that the Plaintiff has "not demonstrated that any additional deposition of Salvi and Bragar would reveal material and relevant information to offer to the parties in the instant litigation" and that the Plaintiff's "demands are without limitations as to the relevant period of time or to categories of documents that are material to their

7

action against the Pechota Defendants." (October 11 Opinion at
9).

However, in an abundance of caution, this Court
instructed Salvi, Bragar and Ragues to submit an affidavit of
good faith compliance, including a description of their
participation, if any, in the relevant immigration matters.
(October 11 Opinion at 11).  The October 11 Opinion also granted
the Plaintiff leave to apply to take Salvi or Bragar's
deposition, if and only if, good cause could be shown stemming
from issues that had not been addressed in the October 11
Opinion.  (October 11 Opinion at 11).

In March 2013, Plaintiff served subpoenas on Salvi,
Bragar and Tuttle directing them to appear and testify at the
September 16, 2013 trial.  The trial subpoenas for Salvi and
Bragar further requested that they produce all "[d]ocuments and
things sent, received, or exchanged with Vratislav Pechota, Jr.
and or/his office since year 2003."  (Salvi Aff., Ex. A, Bragar
Aff., Ex. A).

As to non-party witnesses Salvi and Bragar, the
subpoenas are quashed.  Plaintiff has not demonstrated any good

8

cause as to her request that they produce the requested
documents.  Both Salvi and Bragar have already responded to
Plaintiff's request and this Court previously found that these
non-party witnesses could not offer any relevant or material
information.  (See October 11 Opinion at 9).  During the course
of his three day deposition in the State Court Action, Salvi
testified that he had not received from, or sent any documents
to, the Defendants, and stated that any and all documents in his
possession relating to Mrs. Koch and the divorce action had been
provided in full to Mrs. Koch's counsel.  (Salvi Aff., Ex. H).
Similarly, on October 22, 2012, Bragar served a formal discovery
response and confirmed that he is not in possession of any
documents or communications with the Defendants in this action.
(Bragar Aff., Ex. G).

     Moreover, both Salvi and Bragar have provided
affidavits of good faith confirming that neither has any
"relevant or material" information as to the instant proceeding.
In compliance with the October 11 Opinion, Salvi timely served
an Affidavit of Good Faith, stating that he "personally
conducted a good faith review and search of his files" and that
the "entire legal file from the underlying divorce action was
produced to the Plaintiffs in the State Court legal malpractice

action." (Salvi Aff., Ex. M ¶¶ 4, 10).  Salvi also noted that

he had "no additional documents, files, pleadings, proceedings

or communications in [his] possession related to the Plaintiffs'

immigration matter or contacts with the Pechota Defendants in

this matter . . . ." (Id. ¶ 10).  Similarly, Bragar confirmed

that he had "no material or relevant testimony to offer the

parties in this action" and stated that "[he] was not aware that

plaintiff had immigration counsel (the defendant in this

proceeding) at the time that [he] represented plaintiff in the

matrimonial proceeding." (Bragar Aff., Ex. G).  In providing

his affidavit of good faith compliance, Bragar confirmed that

"[he] simply [has] no knowledge of plaintiff's immigration

history or her purported immigration issues." (Id.).[1]


            Bragar and Salvi's lack of knowledge was confirmed in

their respective affidavits and supported by the testimony of

the Plaintiff at her deposition (See e.g., Bragar Aff., Ex. Q,

146, 11. 20-22, 175-76, 11. 18-8, 186, 11. 4-17).  As Plaintiff

---

[1] In an effort to overcome Bragar's stated lack of knowledge, Plaintiff has
provided an email, which she alleges supports her assertion that Bragar
promised to "take care" of her immigration issues in the context of the
matrimonial action.  (Mrs. Koch Aff., Ex. A).  All of the emails reference
the Kochs divorce action, the status of that action and proposed strategies
to be used in that case.  (Id.).  While the last email mentions a "green card
issue," it does not suggest that there was some agreement between the parties
that Bragar would "take care" of Plaintiff's immigration issues.  (Id.).
Contrary to the Plaintiff's assertion, the email chain demonstrates that the
scope of Bragar's representation was limited to claims against her husband.
(Id.).

10

has readily admitted at her deposition in this action, Pechota
was the only attorney hired to perform any legal services in
connection with Plaintiff's immigration matters.  (stating that
"I was handling all my requirements regarding my green card with
Dr. Pechota.")  (Bragar, Ex. Q, 186, 11. 4-17).[2]  Plaintiff
further testified that Pechota explained to her that she would
get a green card for a two-year period first, and that Pechota
"would take care of the rest."  (Id., 181, 11. 2-10).

    Taken together, Plaintiff has not provided any good
cause for requesting the depositions of Bragar or Salvi.  At no
time subsequent to the service of their affidavits did
Plaintiff's counsel object to the responses.  Contrary to the
express mandate in the October 11 Opinion, Plaintiff did not
seek leave to apply to compel further discovery responses to
this Court.  Considering these circumstances, as well as the
October 11 Opinion and November 21 Order, the Plaintiff was
effectually precluded from obtaining additional discovery

---

[2] Plaintiff's deposition testimony also demonstrates that Pechota was her sole
attorney in immigration matters.

    Q:   Mrs. Koch, after July 2, 2004, did you ever hire another
    lawyer to represent you regarding your green card?

    A:   Why would I have don't that?  I had Mr. Pechota already.
(Bragar Aff., Ex. Q, 194, 11. 1-5).

11

without a showing of good cause, which had not been previously addressed. Plaintiff has produced no reasons as to why Bragar and Salvi, as non-parties, should be subjected to the "expense and inconvenience" of her continued demands. Accordingly, the motions to quash the subpoenas served by Plaintiff on Bragar and Salvi are granted in its entirety. See Richardson v. Arco Chemical Co., No. 95 Civ. 6185, 1996 WL 529999, at *2 (E.D.Pa. Sept. 19, 1996) (holding that "Plaintiff has offered nothing to suggest that [the non-party witness] would testify differently if called as a witness at trial. It seems obvious that this witness has no knowledge regarding the relevant issues . . . raised by plaintiff's complaint. Thus, no legitimate purpose would be served by offering him as a witness at trial.")

As to non-party witness Tuttle, Plaintiff contends that Tuttle's testimony is relevant because he served a subpoena duces tecum to the United States Citizenship and Immigration Services ("USCIS") on April 26, 2011. She contends that "it would appear disingenuous that Tuttle is claiming that 'he has no information relevant and material to the Plaintiff's legal malpractice action against her former immigration attorney[,'] yet procured and served a subpoena for her immigration file to the United States [G]overnment." (See Kovarik Aff. ¶ 21).

12

Plaintiff concludes that it is therefore "the fact-finders' role to compare and contrast Tuttle's testimony and subpoena of Ms. Koch's immigration file with the testimony and affidavits of Defendant Pechota and other evidence to decide which sets of these contradictory material facts are believable."  (Id. ¶ 22).

To begin with, the subpoena served to Tuttle fails to delineate the scope of the testimony requested.  Presumably, Tuttle's testimony would involve the contents of the Mrs. Koch's immigration files.  Tuttle contends that the subpoena was served to the USCIS as part of his representation of the Bragar defendants in the State Court Action, which does not warrant his testimony at this trial.  As the Plaintiff has repeatedly advanced in various motions, the State Court action arises out of her representation in a matrimonial action, and it is wholly irrelevant to the immigration-related issues central to the instant action.  Plaintiff has not met her burden to show how the information sought by Tuttle is relevant and material to the allegation and claims at issue in this proceeding.  Vague references to the role of the fact-finder and unfounded allegations of purportedly deceptive conduct by Tuttle do not show how Tuttle had personal knowledge of the events described in the Plaintiff's complaint in this action.  There is no

13

legitimate purpose served by offering Tuttle as a witness at trial.

In addition, the information Tuttle may have in connection with his representation of the Bragar defendants in the State Court Action may be protected by the attorney-client privilege and work-product doctrine.[3]  As counsel for the Bragar defendants, Tuttle cannot testify as to communications and information obtained from his clients in the course of his representation.  Likewise, the work-product doctrine protects any information Tuttle has in relation to the information he obtained during the course of his representation of the Bragar defendants.  Accordingly, for the reasons stated above, the subpoena is quashed as to Tuttle in its entirety.

## 2) The Plaintiff's Motion for Sanctions is Denied and the Motion to Strike is Denied in Part and Granted in Part

---

[3] A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice. Pritchard v. County of Erie (In re County of Erie), 473 F.3d 413, 419 (2d Cir. 2007) (citation omitted).  To invoke the work product privilege, a party "must show that the documents were prepared principally or exclusively to assist in anticipated or ongoing litigation." Id. (citing Fed. R. Civ. P. 26(b)(3); Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 471 (S.D.N.Y. 1993).

On April 18, 2013, Plaintiff made several motions for
(1) an award of discovery sanctions pursuant to Rules 30(g)(1)
and 37(d) of the Federal Rules of Civil Procedure;[4] and (2) to
strike Defendants' second amended answer pursuant to Rules 12(f)
and 11(b) of the Federal Rules of Civil Procedure.  (See Dkt.
No. 309, 311).  First, Plaintiff contends that she is entitled
to fees and sanctions because Defendants allegedly refused to
conduct her deposition by videoconference on January 9, 2012,
despite an order from this Court (the "January 11 Letter")
(Dkt. No. 82).  Second, Plaintiff maintains that Defendants'
answer to Plaintiff's amended complaint should be stricken for
gross violation of Rules 8(b), 10(b) and 11(b) of the Federal
Rules of Civil Procedure.

---

[4] Rule 37(d), in relevant part, states:

(1) *In General.*

(A) *Motion; Grounds for Sanctions.* The court where the action is pending may,
on motion, order sanctions if:

(i) a party or a party's officer, director, or managing agent--or a person
designated under Rule 30(b)(6) or 31(a)(4)--fails, after being served with
proper notice, to appear for that person's deposition;

. . . .

(3) *Types of Sanctions.* Sanctions may include any of the orders listed in
Rule 37(b)(2)(A)(i)-(vi). Instead of or in addition to these sanctions, the
court must require the party failing to act, the attorney advising that
party, or both to pay the reasonable expenses, including attorney's fees,
caused by the failure, unless the failure was substantially justified or
other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(d).

In addition, after motion practice commenced, Plaintiff moved to strike Defendants' Affidavit in Further Opposition by Attorney Weinstock (Dkt. No. 329) as an inappropriate submission.  (Dkt. No. 331).  That application is denied in its entirety as the Affidavit was submitted in opposition to Plaintiff's motion for discovery sanctions and the allegations made therein.

The Motion For Sanctions

The first dispute arises out of Defendant's refusal to conduct Plaintiff's deposition by videoconference in the Czech Republic on January 9, 2012.  Plaintiff contends that Defendants "have continuously failed and refused to cooperate in discovery" and disobeyed the January 11 Letter, which was "so ordered" by this Court.  (Pl. Motion – Contempt ¶¶ 11-12).

"Courts allow the award of attorney's fees and expenses where the party noticing the deposition fails to attend and does not deliver sufficient notice of cancellation to the other."  Donini Intern., S.P.A. v. Satec (U.S.A.), LLC, No. 03 Civ. 9471(CSH), 2006 WL 695546, at *7 (S.D.N.Y. Mar. 16, 2006).

16

Specifically, under Rule 30(g)(1), a party who notices a
deposition which the noticed party attends and is prepared to
proceed with the deposition, and the party who noticed the
deposition fails to proceed, the court may order such party to
pay to the noticed party the reasonable expenses of attending
the deposition, including attorney's fees of such party.  Fed.
R. Civ. P. 30(g)(1).

The January 11 Letter represented that the Plaintiff
was "paying for the hotel, her counsel, interpreter, and Mr.
Kovarik and videoconferencing arrangements . . . since January
2, 2012 to facilitate Plaintiff's deposition . . . ."  (January
11 Letter at 1).  Plaintiff sought an order "directing
Defendants to appear and examine Plaintiff immediately under the
pain of being liable for waste."  (Id. at 2).

As the Defendants point out, however, Mrs. Koch was
also scheduled to be deposed in the State Court Action on
Thursday, January 5, 2012.  In addition, on April 3, 2013,
Special Referee Jeffrey A. Helewitz in the State Court Action
issued an Order pursuant to stipulation directing the Plaintiff
to pay the defendants in the State Court Action $10,000 to cover
the costs of Mrs. Koch's deposition.  (Def. Opp., Ex. 2).

17

Special Referee Helewitz determined that "[t]he expenses of plaintiff and/or her attorney(s) to travel to the facility in the Czech Republic, and any personal expenses incident thereto including, but not limited to, meals and hotels, are to be borne by plaintiff.  Plaintiff assumes the responsibility of making the arrangements with the video conferencing facility in the Czech Republic, and paying for same.  Plaintiff will submit the bill or bills for the cost of the video conferencing facility in the Czech Republic, and its transmission, to defendants, and defendants will pay their collective 50% of said costs within 60 days of receipt."  (Id.).

According to the Plaintiff's reply, Defendants' counsel "had been invited to attend the state court deposition, but he would not have been permitted actually to question M[r]s. Koch at that point."  (Pl. Reply – Contempt ¶ 6).   Therefore, Plaintiff contends that "a separate arrangement was made for [Mrs.] Koch to be available at latest on January 11, 2012 by Attorney Weinstock . . . . ." (Id. ¶ 7).  However, Plaintiff has not produced the notice of deposition that Defendants served or any evidence demonstrating that Defendants agreed to depose the Plaintiff via teleconference in January.  Instead, a notice of deposition was served to Plaintiff to appear on September 22,

18

2011 in New York, New York. (See Dkt. No. 64, Ex. 5). In addition, on January 9, 2012, Defendants moved the Court for summary judgment, including among other things, an order "directing plaintiffs to appear in the Southern District for their depositions; prove with documentations that they cannot appear in the district; directing plaintiffs to pay defendants' reasonable expenses for conducting plaintiffs' depositions in the Czech Republic." (Dkt. No. 74). Defendant also wrote to the Court on January 13, 2012 advising the Court that the parties never came to an agreement on the method in which the Plaintiff would be deposed, and that based upon scheduling problems, it would not be realistic to attempt to complete the deposition in January. (See Def. Ex. 1). Defendants explained that there was not adequate time to make logistical arrangements, including making the proper arrangement for a court reporter, translator and video-conferencing. Accordingly, on January 13, 2012, this Court issued an order scheduling oral argument on Defendant's motion seeking in persona deposition of the Plaintiff to resolve the issue. (See Dkt. No. 83).

On June 22, 2012, this Court held that Defendants were not entitled to take the Plaintiff's deposition in the Southern District of New York, but that Mrs. Koch's deposition "should

19

commence in the Czech Republic via video conference." (June 22
Opinion at 17-18). The June 22 Opinion also stated that "the
Plaintiffs will bear the cost of her videoconference
deposition." (Id. at 18). Subsequently, additional disputes
arose between the parties regarding the scheduling of the
deposition and this Court ordered that the Plaintiff's
deposition be held in the Czech Republic with the parties
sharing the expenses. (See Dkt. No. 234, Transcript of
Proceedings held on 2/4/13, at 7-8) (The Court stating that "I
think everybody agreed that the cost of this deposition will be
split. It's a complicated issue because she can't come to the
United States, so she has to – she's going to testify, on the
other hand, it's the defendant's deposition. So we'll split the
cost of this deposition.").

    Plaintiff now seeks $23,209.77 in payments for
"counsel, court reporters, interpreters, video-conferencing
serves and locations" with an interest of 9% added from February
1, 2012 for the January deposition. (Pl. Reply – Contempt ¶
14). Even setting aside that the Defendants made a motion
seeking Plaintiff's in person deposition on January 9, 2012 and
that the notice of deposition of the Plaintiff was to be held in
New York, a review of the emails submitted by the Plaintiff

suggests that the parties had not agreed to the video-conference deposition.  (See Pl. Motion - Contempt, Ex. B) (stating "It would appear that your recent position is inconsistent with your previous statements and positions.  Regardless o[f] our differences, Plaintiff will (AGAIN) be available . . .").  Neither the Plaintiff's unilateral availability nor the January 11 Letter warrants an award of the expenses outlined by the Plaintiff.  (See Dkt. No. 310, Ex. 3).  Accordingly for the reasons stated above, an award of expenses is unjustified and Plaintiff's motion for sanctions is denied.


The Motion to Strike


        Plaintiff also moves to strike some of the Defendants' amended answers and affirmative defenses to the amended complaint.  Rule 8(b) of the Federal Rules of Civil Procedure requires that "a party must (A) state in short and plain terms its defenses to each claim asserted against it; and (B) admit or deny the allegations asserted against it by an opposing party."  Fed. R. Civ. P. 8(b)(1).  "A denial must fairly respond to the substance of the allegation."  Fed. R. Civ. P. 8(b)(2).  Otherwise, "averments in a pleading to which a responsive

21

pleading is required . . . are admitted when not denied in the
responsive pleading." Fed. R. Civ. P. 8(d).

"Courts in this Circuit generally take a strict view
of Rule 8(b) requirements and Rule 8(d) consequences, even when
the result is admission of claim elements." Scherer v.
Equitable Life Assurance Society of U.S., 2004 WL 2101932, at
*12 (S.D.N.Y. Sept. 21, 2004) (citing cases). However, "[t]here
are no magic words needed to deny an allegation." In re Waring,
491 B.R. 324, 329 (E.D.N.Y. Bkrtcy. 2013). "[T]he federal rules
were designed to eliminate objections based on frivolous or
immaterial technicalities. As long as the statement fairly
meets the substance of the averment being denied and it is clear
what defenses the adverse party is being called upon to meet at
trial, a responsive plea should be upheld even though it may be
argumentative in form." Wright & Miller, Federal Practice and
Procedure, § 1268.

Plaintiffs contend Pechota denied a large number of
allegations "upon information and belief" and that "[s]ome of
these are transparently inappropriate." (Pl. Motion - Sanctions
¶ 21). Plaintiff maintains that the Defendants "should have
undertaken minimal investigation before issuing this blanket

22

denial." (Id. ¶ 28).  Specifically, Plaintiff takes issue with paragraphs 1 through and including 21, which relate to the identity of the Plaintiff, and paragraphs 65, 67, 69, 71, 72, 76, 81 and 82 of the Amended Complaint, which relate to Defendants,[5] as well as certain affirmative defenses advanced by Defendants.

Defendants maintain that Pechota did not have firsthand knowledge as to paragraphs 1 through 21 of the Amended Complaint as they pertain to the Plaintiff's background, such as her residence, marriage to Mr. Koch and attempts to reside in the United States.  They also contend that the "same can be said

---

[5] These paragraphs allege:

65. Pechota is, like Vlad'ka, of Czech heritage.

67. Pechota is familiar with Czech culture and conventions.

69. Pechota is familiar with American legal conventions.

71. Pechota is aware of fundamental cultural differences between the Czech Republic and USA.

72. Pechota is aware of fundamental differences in legal principles between the Czech Republic and USA systems.

76. The Law Office of Vratislav Pechota, Jr. upon information and belief is an enterprise facilitating Pechota's activity.

81. Pechota entered the executed G-28 with DHS as Vlad'ka Koch's designated legal representative in her LPR proceedings.

82. Form G-28 is recognized by DHS until the conclusion of the immigration matter for which it was entered.

(See Am. Compl.)

23

for each and every allegation in the Amended Complaint referred
to at pages 6 through 8" of Plaintiff's Affirmation.  (Def. Opp
– Strike ¶ 10).

        In reviewing the Defendants' answers, while they may
not be elaborate, the basic requirements of Rule 8(b) have been
met.  White v. Smith, 91 F.R.D 607, 608 (D.C.N.Y. 1981) (stating
that "[t]he federal rule does not contemplate an elaborate reply
to every allegation of a complaint.  It does not bind a
defendant to his, her, or its responses for all time.  It does
not even condemn averments of insufficient information or
knowledge upon which to form a belief as to the truth of the
complainant's allegations."); see also In re Waring, 491 B.R. at
330 n.5 (noting that "practitioners would be wise to limit
themselves to simple denials, rather than adding additional
facts by responding indirectly rather than directly.").  Here,
Defendants have denied each of Plaintiff's allegations, and
Plaintiff has point out any defects in the answer which would
prevent the plaintiff from properly preparing its case for
trial.

        Rule 12(f) of the Federal Rules of Civil Procedure
provides that, "[t]he court may strike a pleading an

24

insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are viewed with disfavor and [are] infrequently granted." RSM Prod. Corp. v. Fridman, 643 F. Supp. 2d 382, 394 (S.D.N.Y. 2009); see also William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp., 744 F.2d 935, 939 (2d Cir. 1984) ("A motion to strike an affirmative defense under Rule 12(f), Fed. R. Civ. P. for legal insufficiency is not favored and will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense.") (citation and quotation marks omitted). The moving party has the burden of demonstrating to the Court "to a certainty that plaintiff[] would succeed despite any set of facts which could be proved in support of the defense." Walsh v. City of New York, 585 F. Supp. 2d 555, 557 (S.D.N.Y. 2008).

Plaintiffs contend that the affirmative defenses "presented by the Defendant[s] are so vague and conclusory that Plaintiff has no idea which defenses Defendant actually intends to raise., or of the factual bases for such defenses." (Pl. Reply – Sanctions ¶ 19). According to the Plaintiff, the "blanket affirmative defenses to the allegations and causes

25

of actions included in Plaintiff's Amended Complaint, including
causes of action that already survived Defendants' motions to
dismiss." (Pl. Motion – Summary Judgment at 10).

Defendants assert eight affirmative defenses. A
review of these affirmative defenses demonstrates that the
Fourth Affirmative and Sixth Affirmative Defenses are
insufficient as pled by the Defendants. The Fourth Affirmative
Defense states, "That prior to the service of the Summons and
Amended Complaint in this action, there was pending in Court a
similar action brought by the same plaintiffs to recover for the
injuries alleged herein; thus this action may not be
maintained." (Second Amended Answer ¶ 60). Defendants,
however, removed this case to the present forum instead of
joining this action with the State Court Action. In addition,
the Defendants raised this defense with this Court in their
motion for summary judgment, and the argument was rejected by
the June 22 Opinion. (See Dkt. No. 177 at 12-14). The Sixth
Affirmative Defense states that "The answering defendants are
entitled to a set-off pursuant to Section 15-108 of the New York
General Obligations Law insofar as settlement or release of one
tortfeasor decreases the amount plaintiffs may recovered from
the remaining tortfeasor(s) by the greater of: 1) the amount

26

stipulated as consideration of the release; 2) the amount actually paid for the release; or 3) the settling torfeasor's equitable share of plaintiff's damages." Here, there are no additional tortfeasors identified or involved by either party in this matter and thus it appears that this defense is insufficient.

As to the Defendant's other answers and affirmative defenses, Plaintiff has not established the necessary "certainty" that the record contains no other facts on which Defendant could rely to support its contentions. Accordingly, as discussed above, Plaintiff's motion to strike is granted as to the Fourth and Sixth Affirmative Defenses, and denied as to all others.

### 3) **Defendants' Motion to Preclude Has Been Previously Addressed by this Court**

On May 1, 2013, Defendants moved to preclude the Plaintiff from testifying at trial pursuant to Rule 37(b)(2) and 37(d) of the Federal Rules of Civil Procedure.[6] Having addressed

---

[6] Rule 37(d) provides that if a party: 1) fails to appear to testify at a deposition after being served with a proper notice, 2) fails to serve answers or objections to interrogatories submitted under Rule 33, after proper service thereof, or 3) fails to serve a written response to a request for inspection submitted under Rule 34, after proper service thereof, the Court

this issue several times at a number of hearings, it is incredible that the parties continue to argue about whether the Plaintiff must complete her deposition.  However, in an effort to clarify whatever confusion remains, Plaintiff is, once again, directed to appear for the completion of her deposition.

On March 27, 2013, this Court heard a motion relating to the continued deposition of Mrs. Koch.  (Dkt. No. 287, at 2:3-2:5).  At that time the Court held that Plaintiff's "deposition can be taken at any time the parties can agree. Take it, if she chooses to be deposed, up until April 10, and the trial will be April 15." (Id. at 7:2-7:4).  After additional delays, this Court extended the time in which to complete Plaintiff's deposition.  (See Dkt. No. 323).  In addition, a hearing on April 17, 2013 discussed the completion of Plaintiff's deposition and the issue of video streaming her testimony at trial.  Relevant portions of the transcript include the following:

---

may make such orders in regard to the failure as are just, including the imposition of any sanction authorized under Rule 37(b)(2)(A), (B), and (C). Fed. R. Civ. P. 37(d).

THE COURT: You'll get the deposition. That's fine. It will be completed. (Id. at 3:8 - 3:9).


\- \- \-


THE COURT: She certainly can be deposed.

MR. WEINSTOCK: You did not direct her to come here. You said our options were to video conference her deposition.

THE COURT: Whatever she does, she does. I am not going to direct anybody anything. But as a matter of discovery, the deposition undertaken should be completed.  That's all I was saying.  (Id. at 6:2 - 6:8).


\- \- \-


THE COURT: If for some reason she isn't willing to participate, then the deposition won't be used. Then we get to the [streaming] thing. If she doesn't participate in the completing of the deposition, I will not permit her to testify on [streaming] because she has not submitted herself to the deposition, completing the deposition. That's leaving aside the methodology of the presentation and all of that. I just don't think that she can refuse to be deposed and then walk in and testify.

MR. BLUESTONE: I understand what your Honor is saying. However, I think you would agree with me that refusing to do something and being unable to do something may be two different things.

THE COURT: It's going to have the same result.  (Id. 9:3 - 9:16).


\- \- \-


29

MR. BLUESTONE: The question of potential video
streaming is an open question.

THE COURT: Is open. And it will have to be resolved.

MR. WEINSTOCK: And the plaintiff has to appear,
though, for defendant's completion. Otherwise –

THE COURT: Otherwise, she won't use the deposition,
obviously, and I don't think I would permit her to
testify unless she has submitted herself to pretrial
discovery.  (Id. at 10:16 – 10:23).


          Plaintiffs maintain that courts in this Circuit

typically consider preclusion a harsh remedy to be "deployed

only in rare situations." Cine Forty-Second Street Theatre

Corp. v. Allied Artists Pictures, Corp., 602 F.2d 1062, 1064 (2d

Cir. 1979).  While preclusion is indeed a harsh remedy, district

courts have wide discretion in determining whether to impose

sanctions.  See National Hockey League v. Metropolitan Hockey

Club, Inc., 427 U.S. 639, 642 (1976).  "Rule 37(d) also mandates

the imposition of sanctions, unless the party's failure was

justified or the imposition of sanctions would be unjust."

Diamond v. Simon, No. 89 Civ. 7061, 1991 WL 24389, at *3

(S.D.N.Y. Feb. 20, 1991).  In consideration of the findings in

this Opinion and the hearings on March 27, 2013 and April 17,

2013 addressing the issue of Plaintiff's deposition and its

completion, Plaintiff is directed to appear for the completion

of her deposition prior to trial.  The Plaintiff has brought the instant action and now is on notice to complete her deposition prior to the scheduled trial date.  Any failure to appear for the completion of Plaintiff's deposition will result in the preclusion of her testimony at trial, whether in person or video streamed.

## Conclusion

For the foregoing reasons, (1) the motions of the third-party witnesses is granted and they are relieved of testifying at the September 16, 2013 trial in this matter; (2) Plaintiff's motion for contempt is denied; (3) Plaintiff's motion to strike is granted in part and denied in part; and (4) Defendant's motion to preclude shall be granted, if Plaintiff does not complete her deposition prior to trial.

This opinion resolves all outstanding motions between the parties, with the exception of Plaintiff's motion for a grant of partial summary judgment.[7]

---

[7] On April 10, 2013, the trial date in the instant action was changed from April 15, 2013 to September 16, 2013.  Accordingly, the Court granted the parties' request for an extension of time as to Plaintiff's motion for summary judgment, (Dkt. No. 262), which is currently returnable on Wednesday, August 21, 2013.  Specifically, Plaintiff seeks partial summary judgment on

It is so ordered.

**New York, NY**
**July, 23 2013**

ROBERT W. SWEET
U.S.D.J.

---

the following causes of action:  (i) the fourth cause of action for negligent misrepresentation; (ii) the tenth cause of action for breach of contract; (iii) the eleventh cause of action for conversion; (iv) the twelfth cause of action for spoliation of evidence; (v) the thirteenth cause of action for violation of Judiciary Law § 487; (vi) the fourteenth cause of action for RICO violation; (vii) and as to facts justifying the imposition of punitive damages, pursuant to Fed. R. Civ. P. 56.